UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ALYSSA ANTHONY,<br>Defendant. | Case No. 16-cr-00150-BLF-4 (VKD)<br><br>**ORDER DENYING MOTION TO COMPEL DISCOVERY**<br><br>Re: Dkt. No. 775 |

The United States moves to compel defendant Alyssa Anthony to disclose "any and all communications between [her former defense counsel] Mr. Robert Carlin and Ms. Alyssa Anthony from November 2019 to July 31, 2020, related to the plea negotiations, plea proposal, plea agreement, and/or any other matters relevant to Ms. Anthony's decision not to go to trial and to plead guilty in July 2020 in the above-captioned case." Dkt. No. 775 at 1.[1] Ms. Anthony opposes the motion. Dkt. No. 780. The Court held a hearing on the motion on March 24, 2023. Dkt. No. 785.

For the reasons, explained below the Court denies the motion.

## I. BACKGROUND

On April 7, 2016, the United States indicted Ms. Anthony and three co-defendants on charges that they engaged in sex trafficking of children. One co-defendant was additionally charged with sexual exploitation of children. Dkt. No. 1.

On July 10, 2020, pursuant to a negotiated plea agreement, the United States filed a

---

[1] Judge Freeman referred the motion to compel discovery to this Court for resolution. *See* Dkt. No. 777.

superseding information charging Ms. Anthony with a single count of conspiracy to commit sex trafficking of children in violation of 18 U.S.C. § 1594(c). Dkt. No. 244. Ms. Anthony pled guilty to the superseding information on July 21, 2020. Dkt. Nos. 250, 251, 325. Assistant Federal Public Defender Robert Carlin represented Ms. Anthony during the months preceding her guilty plea and during the change of plea hearing on July 21, 2020. *See* Dkt. No. 669-2 ¶¶ 1, 4, 5.

On September 22, 2022, Ms. Anthony appeared before the duty magistrate judge and asked to change counsel in anticipation of filing a motion to withdraw her guilty plea. Dkt. No. 636. On September 26, 2022, after a further hearing on Ms. Anthony's request to change counsel, the duty magistrate judge granted her request, and her current counsel substituted in as counsel of record in place of Mr. Carlin. Dkt. No. 639.

On October 13, 2022, Ms. Anthony filed a motion to withdraw her guilty plea on the ground that her plea was not knowing and voluntary. Dkt. No. 669. In support of her motion, Ms. Anthony submitted a declaration from herself and from Mr. Carlin, in addition to other evidence. Dkt. Nos. 669-1, 669-2. The United States opposed Ms. Anthony's motion to withdraw her plea, and Judge Freeman held a hearing on the motion on November 1, 2022. Dkt. Nos. 713, 728. At the conclusion of the hearing, Judge Freeman indicated she intended to grant the motion on the record presented, but asked the United States to clearly state whether it requested an evidentiary hearing on the motion. Dkt. No. 728 (Nov. 14, 2022 tx. 24:5-13). After some further discussion, the United States asked for an evidentiary hearing. *Id.* (Nov. 14, 2022 tx. 24:14-26:23). That hearing is set for April 4, 2023.

The United States contends that Ms. Anthony has waived the attorney-client privilege with respect to her communications with Mr. Carlin, and seeks discovery of those communications in support of its opposition to Ms. Anthony's motion to withdraw her plea.

## II.   LEGAL STANDARD

The attorney-client privilege protects from discovery communications concerning legal advice sought from an attorney in his or her capacity as a professional legal advisor, where the communication is made in confidence, is intended to be maintained in confidence by the client, and is not disclosed to a third party. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th

1   Cir. 2020). The privilege extends to a client's confidential disclosures to an attorney in order to
2   obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States*
3   *v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotations omitted).
4       The attorney-client privilege may be waived "either implicitly, by placing privileged
5   matters in controversy, or explicitly, by turning over privileged documents." *Gomez v.*
6   *Vernon,* 255 F.3d 1118, 1131 (9th Cir.), *cert. denied*, *Beauclair v. Puente Gomez,* 534 U.S. 1066
7   (2001); *see also Bittaker v. Woodford,* 331 F.3d 715, 719-720 & n.4 (9th Cir. 2003)
8   (distinguishing between waiver by claim assertion and waiver by disclosure). The waiver doctrine
9   protects against "the unfairness that would result from a privilege holder selectively disclosing
10  privileged communications to an adversary, revealing those that support the cause while claiming
11  the shelter of the privilege to avoid disclosing those that are less favorable." *Tennenbaum v.*
12  *Deloitte & Touche,* 77 F.3d 337, 340-41 (9th Cir. 1996) (citing 8 J. Wigmore, *Evidence* § 2327, at
13  636). In other words, the privilege "may not be used both as a sword and a shield." *Chevron*
14  *Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir. 1992).

## III. DISCUSSION

Despite some ambiguity in its motion, the United States confirmed at the hearing that it does not contend that Ms. Anthony expressly waived the attorney-client privilege with respect to her communications with Mr. Carlin by voluntarily disclosing those communications. *See* Dkt. No. 775 at 3, 9-10; Dkt. No. 785. Rather, the United States argues that Ms. Anthony has implicitly waived the privilege by putting her communications with Mr. Carlin at issue in her motion to withdraw her plea. *See* Dkt. No. 775 at 9-11.

Courts in the Ninth Circuit employ a three-pronged test to determine whether a party has impliedly waived the attorney-client privilege. *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). "First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit. Second, the court examines whether through this affirmative act, the asserting party puts the privileged information at issue. Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense." *Id*. (internal quotations and citations omitted).

1    With respect to the first and second prongs of the test, Ms. Anthony asserts the privilege in
2    connection with her motion to withdraw her guilty plea, resisting the government's efforts to
3    obtain discovery in opposing that motion. The question is whether by moving to withdraw her
4    plea, Ms. Anthony has put her privileged communications with Mr. Carlin at issue. The Court
5    concludes that she has not.

6    Ms. Anthony moves to withdraw her guilty plea on the ground that at the time it was made,
7    she suffered from a psychological condition (i.e., PTSD and trauma from on-going domestic
8    violence) that impaired her ability to make a reasoned decision to plead guilty. *See generally* Dkt.
9    No. 669. The motion does not rely on any legal advice provided by Mr. Carlin. Ms. Anthony
10   does not claim to have been ineffectively counseled. The motion also does not rely on any
11   privileged communications between Ms. Anthony and Mr. Carlin. While the United States
12   correctly observes that Mr. Carlin submitted a declaration in support of Ms. Anthony's motion to
13   withdraw her plea, that declaration does not disclose any privileged communications, nor does the
14   motion rely on them. Rather, Mr. Carlin's declaration testimony describes his own observations
15   and characterizations of Ms. Anthony's state of mind on different occasions and his own
16   reservations about her guilty plea. *See* Dkt. No. 669-2. As both parties acknowledge, Judge
17   Freeman has already indicated that she does not find Mr. Carlin's declaration helpful to resolution
18   of the motion. Dkt. No. 728 (Nov. 14, 2022 tx. 24:18-21). Indeed, at the hearing on the present
19   motion to compel, Ms. Anthony represented that she was prepared to withdraw Mr. Carlin's
20   declaration and not rely upon it in support of her motion to withdraw her plea. Dkt. No. 785.

21   The cases on which the United States principally relies—*Amlani, Bittaker*, and *Chevron*—
22   are distinguishable. In *Amlani*, the defendant moved to vacate his conviction on the ground that
23   the government had deprived him of his Sixth Amendment right to counsel when the prosecutor
24   deliberately undermined his confidence in his attorney by disparaging that attorney in the
25   defendant's presence. The Ninth Circuit concluded that the defendant had put his reasons for
26   firing his attorney directly at issue and had waived any privilege covering his communications
27   about the reasons for the firing. *Amlani*, 169 F.3d at 1195-1196. Similarly, in *Bittaker*, a habeas
28   petitioner waived his attorney-client privilege when he put his attorney's effectiveness directly at

4

1   issue in a habeas proceeding.  The waiver itself was undisputed, but the Ninth Circuit affirmed
2   that it did not extend beyond the habeas proceeding.  *Bittaker*, 331 F.3d at 717.  Finally, in
3   *Chevron*, the defendant asserted reliance on advice of counsel in defending against a claim that it
4   made a misleading disclosure.  The Ninth Circuit concluded that the defendant had put its
5   attorney's advice directly at issue and had waived privilege regarding the substance of the advice.
6   *Chevron*, 974 F.2d at 1162-1163.  In all three of these cases, the privilege holder invoked a
7   privileged communication or privileged legal advice as part of a claim or defense, thereby putting
8   the communication or advice at issue.  Ms. Anthony does not rely on her communications with
9   Mr. Carlin for any similar purpose.  In refusing to disclose her privileged communications, Ms.
10  Anthony is not using the privilege as both a sword and shield.  She is only using the privilege as a
11  shield to protect the confidentiality of these communications.

12  　　　　The United States relies heavily on the third prong of the waiver test in arguing that the
13  communications between Ms. Anthony and Mr. Carlin are relevant to the evidentiary showing Ms.
14  Anthony must make to withdraw her plea.  *See* 775 at 11-16.  The United States speculates that
15  Ms. Anthony's communications with her attorney at the time of her guilty plea may reveal
16  information about her contemporaneous state of mind and psychological condition.  But even
17  accepting the government's premise, the Court is not persuaded that these privileged
18  communications are likely to contain evidence "vital" to the government's position.  The United
19  States has available to it multiple other sources of information regarding Ms. Anthony's
20  psychological condition at the time of her plea and the impact of that condition on her ability to
21  make reasoned decisions, including the plea colloquy itself, her declaration testimony, her
22  therapist's declaration testimony, expert testimony, and police reports regarding the domestic
23  violence incidents.  Privileged communications that have not been put at issue do not become
24  discoverable merely because they may be relevant.  *See Amlani*, 169 F.3d at 1195.

25  　　　　Having considered each prong of the Ninth Circuit's three-prong test, the Court concludes
26  that Ms. Anthony has not waived the attorney-client privilege with respect to her plea-related
27  communications with Mr. Carlin.
28

## IV. CONCLUSION

The Court denies the United States' motion to compel discovery.

**IT IS SO ORDERED.**

Dated: March 29, 2023

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge